**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

      **Plaintiff,**

                           **Case No. 1:25-cr-73-2**

      v.

                           **JUDGE DOUGLAS R. COLE**

QUAMEO WALKER,

      **Defendant.**

### OPINION AND ORDER

The Magistrate Judge ordered Defendant Quameo Walker detained pending trial in this criminal matter, (Doc. 13), in which Walker[1] allegedly conspired to traffic cocaine, (Docs. 4, 18). More specifically, the Magistrate Judge found, based on the evidence at the detention hearing, that Walker both posed a danger to the community and presented a significant flight risk, neither of which could be sufficiently addressed by any condition or set of conditions surrounding his release. Walker now brings a Motion for Bond (Doc. 37) under 18 U.S.C. § 3145, in which he asks the Court to revisit the Magistrate Judge's determination. As Walker requested, the Court held a hearing on that motion on March 25, 2026. (*See* 3/25/26 Min. Entry). But, for the reasons explained below, the Court concludes that Walker is properly detained pending trial. Accordingly, the Court **DENIES** the Motion (Doc. 37).

---

[1] Because the indictment in this action names two defendants with the same last name (they are brothers), the Court will refer to Quameo Walker (the individual seeking bond here) as Walker, and refer to his brother, Montez Walker, as Montez.

## BACKGROUND

On July 18, 2025, the government filed a Criminal Complaint charging Quameo Walker and his brother Montez with conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), as well as attempt of the same. (Doc. 4, #185). Since late 2024, agents from the Drug Enforcement Administration (DEA) had been investigating a drug trafficking conspiracy responsible for transporting various drugs from Los Angeles, California, to Cincinnati, Ohio. (*Id.* at #188). As part of the investigation, law enforcement utilized an undercover agent to talk with the Walkers about buying a bulk shipment of cocaine and generally surveilled the Walkers. (*Id.* at #188–90). In January 2025, while Walker was in an Uber en route to an airport for a flight to Los Angeles, Indiana State Police conducted a traffic stop based on a lane violation and "located over $460,000 of U.S. Currency that was rolled up in pant legs within multiple suitcases." (*Id.* at #190–91). And again, in April 2025, Los Angeles police stopped a vehicle in which Walker was riding for an undisclosed California Vehicle Code violation, and a canine alerted to the presence of narcotics; a subsequent search resulted in police seizing $194,000 and Walker's cell phone. (*Id.* at #193–94).

The conspiracy came to a head when undercover DEA agents arranged a set-up for the Walkers to purchase a shipment of (sham) cocaine on July 17, 2025. (*Id.* at #194–98). After the exchange, law enforcement attempted to arrest Walker, but he fled. (*Id.*). His brother, Montez, had been parked in view of the purchase, and he fled, too. (*Id.*). Despite that, law enforcement found and arrested both of them later that morning. (*Id.*).

That same day, DEA agents executed a search warrant on Walker's home and found "(1) multiple firearms (handguns and rifles), (2) two money counters, (3) a drug processing station that included hand press(es), cutting materials, a vacuum sealer, plastic baggies, and packaging material, and (4) 52.58 grams of a white powder, believed to be fentanyl."[2] (*Id.* at #199). A search of Montez's home revealed similar items, including 560 grams of cocaine. (*Id.* at #198).

The following day, Wallker appeared before Magistrate Judge Bowman for his initial appearance. (Doc. 7). The Magistrate Judge ordered him temporarily detained pending a detention hearing. (*Id.*; Doc. 9). On July 24, Pretrial Services issued its report, and the Magistrate Judge held the detention hearing. (Docs. 10, 12). There, the Magistrate Judge ordered Walker detained pending trial because the rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3) applied, and Walker had not "introduced sufficient evidence to rebut the presumption." (Doc. 13, #220).

After that, the grand jury indicted Walker (and his brother, Montez) on two counts: (1) drug trafficking conspiracy, in violation of 21 U.S.C. § 846; and (2) attempted possession with intent to distribute cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846, along with a forfeiture allegation. (Doc. 18, #223–25). On August 12, 2025, Walker appeared before Magistrate Judge Litkovitz for his initial

---

[2] At the time of the Complaint, law enforcement had not tested the white powder, (*id.* at #199 n.10), and Walker has not been charged with trafficking fentanyl since then. There was discussion at the bond hearing about the white powder, but Walker disputed that the government's photos were accurate and instead argued that the government staged the guns and white powder in the safe. Regardless, the Court will not assume the exact nature of the white powder.

appearance and arraignment on the indictment. (8/12/25 Min. Entry). She did not revisit his detention status at that arraignment.

On February 23, 2026, Walker filed the instant Motion for Bond (Doc. 37), requesting pretrial release so that he can be with his son. The government responded, (Doc. 39), and Walker replied, (Doc. 41). The Court held a hearing on the motion on March 25, 2026, and took the matter under advisement. (3/25/26 Min. Entry). Thus, the matter is ripe for review.

## LAW AND ANALYSIS

When a magistrate judge orders a defendant detained pending trial under 18 U.S.C. § 3142(e) as a flight risk or danger to the community and the defendant challenges that determination before the district court, the "district court reviews the magistrate judge's decision de novo." *United States v. Roberson*, No. 1:21-cr-127, 2022 WL 2980530, at *2 (S.D. Ohio July 28, 2022) (cleaned up) (collecting cases). As part of this review, the Court considers the entire record, including the Pretrial Services Report, the original detention hearing, all briefings filed in the matter, and any evidence the parties tender at the hearing. *United States v. Carter*, No. 1:20-cr-62-1, 2021 WL 687858, at *2 (S.D. Ohio Feb. 23, 2021).

In conducting that review, the "default position of the law" is that "a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). At the same time, the Court must balance the law's concern for the liberty of a potentially innocent defendant with the need to protect the community and to preserve the integrity of judicial proceedings. So if there is no condition or

4

combination of conditions that will both (1) "reasonably assure the appearance of" the defendant at future proceedings (the risk-of-flight factor), and (2) reasonably assure "the safety of any other person or the community" (the dangerousness factor), a court must deny pretrial bond. 18 U.S.C. § 3142(e). When evaluating these issues, the Court ordinarily considers (1) "the nature and circumstances of the offense"; (2) "the weight of the evidence against the defendant"; (3) "the history and characteristics of the defendant"; and (4) "the nature and seriousness of the danger to any person of the community that would be posed by the defendant's release." *United States v. Parish*, No. 1:21-cv-127-14, 2022 WL 3654892, at *4 (S.D. Ohio Aug. 25, 2022) (citing 18 U.S.C. § 3142(g)).

Beyond that, while release pending trial is the default, there are also times when presumptions come into play. Of particular relevance here, a rebuttable presumption arises as to both factors listed above (risk of flight and dangerousness) if the judicial officer finds that "there is probable cause to believe that the person committed" one of several listed offenses. 18 U.S.C. § 3142(e)(3). Both the complaint and indictment charged Walker with one such offense—"an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* § 3142(e)(3)(A). And the grand jury's return of the indictment establishes that probable cause exists that Walker committed the charged offense. *See Stone*, 608 F.3d at 945. Thus, the Court finds (and the parties do not dispute) that a presumption in favor of pretrial detention applies.

5

Because there is a presumption of detention, Walker "must produce evidence that he is neither a danger to the community nor a risk of flight." *United States v. Brooks*, No. 21-1646, 2021 U.S. App. LEXIS 33089, at *4 (6th Cir. Nov. 5, 2021). Although this "burden of production is not heavy, [the defendant] must introduce at least some evidence." *Id.* (quoting *Stone*, 608 F.3d at 945). Assuming the defendant meets his burden of production, the burden of persuasion is on the government to show that the defendant should be detained. *Stone*, 608 F.3d at 945 (citations omitted).

In this case, the Magistrate Judge found that Walker failed to rebut the presumption. (Doc. 13, #220). Walker argues that several factors support his pretrial release, though, including: (1) he has lived at the same address in Cincinnati, Ohio, almost his entire life; (2) his family also lives in the area and would house him if necessary; (3) he is a high school graduate; (4) "he has employment lined up in case he were to be released with a family member"; (5) he has a limited criminal history; and (6) he would surrender his passport and accept electronic monitoring. (Doc. 37, #305–06). The most significant factor, at least on Walker's account of it, seems to be that Walker has a son who is currently living with the son's maternal grandmother because the child's mother was murdered. (*Id.* at #306). Walker "desperately wishes to be home to reunite with his son and provide his son care and nurturing given this time of tumult." (*Id.*).

In response, the government argues that Walker has not rebutted the presumption against him, and that, even if he has, the government has met its burden

6

of persuasion. (Doc. 39, #314). Specifically, the government argues he poses a danger to the community because law enforcement found seven firearms and large quantities of ammunition in his home. (*Id.* at #314–15). And, as for risk of flight, the government argues that Walker already fled during his arrest, he has a criminal history, he is facing a significant sentence if convicted here, and he "has access to large amounts of money," specifically the hundreds of thousands of dollars seized during the two traffic stops. (*Id.* at #315).

The Court finds that detention pending trial is appropriate here. Admittedly, Walker perhaps meets his burden of production. Looking at his history and characteristics, Walker has deep ties to the community considering that he has lived in the same area almost his entire life and that his family all live in the district, too. (Doc. 37, #305). Alongside those family ties, Walker states that he could live with family and has a job lined up in the event he is released. (*Id.*). Additionally, he owns a graphic design company to which he could potentially return. (Doc. 10, #41). Beyond that, there are no concerns about his physical and mental health, or any other pending criminal cases. *See* 18 U.S.C. § 3142(g)(3). Particularly given the low bar that applies, that is perhaps enough.

The Court concludes it need not definitively answer that question, though, as even assuming Walker met his burden of production, the government has satisfied its burden of persuasion. Begin again with Walker's history and characteristics. While Walker attempts to minimize his criminal history, the Court finds it concerning in several respects. First, he already has a trafficking conviction from state court,

which is the same type of criminal conduct for which he is charged here. (Doc. 10, #42). On top of that, he had been charged in a separate case with two counts of Operating a Vehicle Impaired (OVI), and ultimately was convicted of reckless operation. (*Id.*). So Walker may have a "history relating to drug or alcohol abuse." 18 U.S.C. § 3142(e)(3)(A). Additionally, Walker failed to appear in both the trafficking and OVI cases, as well as in two other traffic cases. (Doc. 10, #42). At a minimum, this criminal history speaks to a risk of flight.

The nature and circumstances of the offense here also suggest a risk of flight. First, Walker fled the scene when law enforcement attempted to arrest him. (Doc. 4, #198). Second, Walker has been stopped with over $500,000 before, suggesting he may well have squirreled away sufficient resources to flee. (*Id.* at #191, 193–94). Third, he faces a mandatory minimum of ten years if convicted. *See* 21 U.S.C. § 841(b)(1)(A). And the possibility of a long sentence can make flight seem like an attractive alternative. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (noting a potential sentence of twenty years in prison provided a "strong incentive to flee").

As for dangerousness, law enforcement found seven guns, two of which the government alleges were stolen, as well as a large quantity of armor-piercing ammunition. (Doc. 4, #199; Doc. 39, #314–15). While Walker argues that he possessed those guns legally and stored them in his home, they were found alongside drug paraphernalia and a white powder.[3] (*See* Doc. 40, #341 (photo of gun safe)). Even

---

[3] *See* supra note 2.

though Walker was not charged with a firearm-related or violent offense, keeping guns in a house alongside drug-processing materials and money counters at least suggests that they may have been intended for use in defense of drugs and drug proceeds. In short, having a large quantity of guns in the context of the other contents of the house gives rise to a clear potential for violence.

The weight of the evidence supports the same conclusion. The Court notes at the outset that the weight of the evidence goes to the weight of the evidence of flight risk or public safety, not the weight of evidence of guilt. *United States v. Bothra*, No. 19-1092, 2019 WL 8883547, at *2 (6th Cir. Mar. 28, 2019). But here, as just mentioned, agents recovered multiple firearms as well as various indicia of drug trafficking at Walker's residence after executing the search warrant. There was also extensive surveillance, including communications with undercover agents, showing the Walker brothers' desire to purchase at least twenty kilograms of cocaine. (*See generally* Doc. 4). The former strikes the Court as evidencing a risk of harm to the public, and the latter as at least suggesting access to resources that would make flight possible.

Given the presumption of detention that Congress mandates, coupled with the information available to the Court on the four factors identified in 18 U.S.C. § 3142(g), the Court concludes that it cannot grant Walker's Motion.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's Motion for Bond (Doc. 37).

**SO ORDERED.**


April 9, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**